**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHROME HEARTS LLC, | |
| Plaintiff, | Case No. 21-cv-02042 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I.  JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Chrome Hearts' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Chrome Hearts substantial injury in the State of Illinois.

## II.  INTRODUCTION

3.      This action has been filed by Chrome Hearts to combat e-commerce store operators who trade upon Chrome Hearts' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including jewelry, bags, shoes and other accessories, using infringing and counterfeit versions of Chrome Hearts' federally registered trademarks (the "Counterfeit Chrome Hearts Products").  Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Chrome Hearts Products to unknowing consumers.  E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Chrome Hearts is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Chrome Hearts Products over the Internet.  Chrome Hearts has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III.  THE PARTIES

**Plaintiff**

4.      Plaintiff Chrome Hearts is a limited liability company organized and existing under the laws of the State of Delaware, with an office and principal place of business at 915 North Mansfield Avenue, Hollywood, California 90038.

5.      Chrome Hearts is an American luxury brand that has been designing, manufacturing, and selling artistically styled leather goods, apparel, jewelry, accessories, home goods and furniture since 1989.  Chrome Hearts is known around the world for its unique rocker-chic jewelry, leather clothing, executive gadgets, striking hand-crafted wood furniture, and top-of-the-line sunglasses (collectively, the "Chrome Hearts Products").

6.      Chrome Hearts is known for combining the look of rugged apparel with sterling silver details to make highly desired fashion apparel and accessories.

7.      Notable clients of Chrome Hearts Products include a wide diversity of entertainers and celebrities that range from the Sex Pistols' Steve Jones to Lee Ann Rimes, Britney Spears, Cher, Billy Idol, Aerosmith, Lenny Kravitz, Guns N' Roses, Bella Hadid, Madonna, Keith Richards, David Beckham, Sting, Gloria Estefan, Christy Turlington, Naomi Campbell and Sharon Stone.  Chrome Hearts Products are sold in exclusive Chrome Hearts stores throughout the world, and in select specialty stores around the world and in Illinois, including George Greene, AccuVision Center and Contacts & Specs in Chicago, and All About Eyes in Bloomington.

8.      In 1993, the Council of Fashion Designers of America ("CFDA") presented Chrome Hearts with an unsolicited award as designer of the year for its innovative accessories and

jewelry designs. In 1999, Chrome Hearts was featured in the "Rock Style" exhibit at the Costume Institute of the Metropolitan Museum of Art.

9. Chrome Hearts Products have been praised and recognized by numerous trade publications, as well as publications directed to the general public, including articles in the United States, Germany, Japan and France. These articles have acclaimed the high artistry, fashion, style and uniqueness of Chrome Hearts' designs.

10. Chrome Hearts advertises throughout the world in select high end and artistic magazines. In addition, Chrome Hearts works with fashion and art magazines to feature editorial articles on Chrome Hearts Products.

11. Virtually all Chrome Hearts Products, including clothing, denim and jewelry are handmade in Los Angeles by Chrome Hearts' craftsmen. The level of expert workmanship exercised by these individuals is superior and conforms to the strict standards established by Chrome Hearts.

12. The Chrome Hearts brand is a multi-million-dollar brand, and Chrome Hearts spends considerable resources marketing and protecting it.

13. Chrome Hearts is the owner of the trademark CHROME HEARTS and various composite trademarks comprising the CHROME HEARTS house mark and assorted design components (collectively, the "CHROME HEARTS Trademarks"). Chrome Hearts has continuously sold Chrome Hearts Products under the CHROME HEARTS house mark since at least as early as 1989. As a result of its long-standing use, Chrome Hearts owns common law trademark rights in its CHROME HEARTS Trademarks. Chrome Hearts has built substantial goodwill in and to the CHROME HEARTS Trademarks. The CHROME HEARTS Trademarks are famous and valuable assets of Chrome Hearts.

4

14.     In addition to common law trademark rights, Chrome Hearts has registered several of its CHROME HEARTS Trademarks with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,665,791 | CHROME HEARTS | For: jewelry, belt buckles made of precious metal, key rings made of precious metal, cufflinks, tie fasteners made of precious metal, brooches, necklaces and earrings in class 014.<br><br>For: garment bags for travel, tote bags, shoulder bags, purses and luggage in class 018.<br><br>For: clothing; namely, shirts, trousers, jackets, vests, chaps, men's and women's underwear, coats, clothing belts, gloves and boots in class 025.<br><br>For: belt buckles not of precious metal and tie fasteners not of precious metal in class 026. |
| 2,192,539 | CHROME HEARTS | For: retail store services in the field of general merchandise in class 042. |
| 5,186,592 | CHROME HEARTS | For: eyewear, namely, eyeglasses, sunglasses, their parts and cases; phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases; pre-recorded CDs and DVDs in the field of music in class 009. |
| 5,186,676 | CHROME HEARTS | For: incense holders in the nature of incense burners in class 021. |

| 4,501,511 | ❈ CHROME HEARTS ❈ | For: retail store services in the fields of general merchandise, namely, clothing, jewelry, handbags, eyewear, toys, furniture and household products in class 035. |
|---|---|---|
| 4,510,061 | ❈ CHROME HEARTS ❈ | For: jewelry, namely, earrings, rings, bracelets, cuff bracelets, necklaces, pendants, brooches, cuff links, tie fasteners and watch bracelets, key rings of precious metals in class 014. |
| 2,118,026 | CHROME HEARTS | For: leather bags, namely, handbags, back packs, tote bags, shoulder bags, wallets and luggage in class 018.<br><br>For: men's and women's clothing, namely, pants, shirts, tee shirts, sweaters, jackets, vests, chaps, skirts, belts, underwear, gloves, shoes and boots in class 025. |
| 2,216,570 | CHROME HEARTS | For: jewelry made wholly or in part of precious metal; namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners in class 014. |
| 2,350,742 | CHROME HEARTS | For: eyewear; namely, eyeglasses, sunglasses and their cases in class 009. |
| 3,061,598 | CHROME HEARTS | For: retail store services in the field of general merchandise in class 035. |
| 4,658,582 | CHROME HEARTS | For: phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases in class 009. |

| | | |
|---|---|---|
| 3,657,370 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets, garment bags and luggage in class 018. |
| 2,216,575 |  | For: clothing; namely, tee shirts, shirts, tank tops, pants, chaps, jeans, sweaters and jackets in class 025. |
| 2,307,126 |  | For: jewelry made wholly or in part of precious metal, namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners in class 014. |
| 2,375,507 |  | For: bags; namely, handbags, shoulder bags, backpacks, tote bags, wallets and luggage in class 018. |
| 2,408,082 |  | For: men's and women's clothing; namely, jeans, leather pants, skirts, jackets, chaps, sweaters, vests tee-shirts and shirts in class 025. |
| 2,538,565 |  | For: eyewear; namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,504,948 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, pendants, brooches, cuff links, tie fasteners, key rings made of precious metals and watch bracelets in class 014. |

| | | |
|---|---|---|
| 4,648,016 |  | For: phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases in class 009. |
| 3,657,375 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets, garment bags and luggage in class 018. |
| 2,954,539 |  | For: jewelry, namely, bracelets, necklaces, rings, earrings, pendants, cuff links and watch bracelets in class 014. |
| 3,770,379 |  | For: eyewear; namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,877,137 |  | For: clothing; namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, leather pants, coats, jackets, hats, socks, underwear and footwear in class 025. |
| 3,937,133 |  | For: jewelry; namely, rings, earrings, necklaces, bracelets, pendants, cuff links, dog tags for wear by humans for decorative purposes and watch bracelets in class 014. |
| 3,365,408 |  | For: retail store services in the field of jewelry, clothing, handbags, eyewear, home furnishings, bed linen, and toys in class 035. |
| 3,385,449 |  | For jewelry, namely, bracelets, rings, watch bands, necklaces, and lighters made of precious metals in class 014. |

| 3,388,911 |  | For clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweat pants, sweaters, and hats in class 025. |
|---|---|---|
| 3,731,400 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,743,975 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets and luggage in class 018. |
| 4,809,639 |  | For: paper goods, namely, post cards, stationery, tissue paper, gift boxes and printed matter, namely, magazines featuring information about fashion in class 016. |
| 3,605,854 |  | For: bags, namely, handbags, shoulder bags, clutches, tote bags, wallets, back packs and luggage in class 018. |
| 3,605,860 |  | For: jewelry, namely, rings, earrings, pendants, necklaces, bracelets, cuff bracelets, cuff links, watch bracelets and key rings made of precious metals in class 014. |
| 3,606,059 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, pants, jackets, coats and hats in class 025. |
| 3,731,397 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |

| 4,501,775 |  | For: retail store services in the field of general merchandise, namely, clothing, clothing accessories, jewelry, handbags, fragrances, personal leather goods, luggage, toys, and smoking articles in class 035. |
| 4,783,129 |  | For: paper goods, namely, post cards, stationery, tissue paper, gift boxes and printed matter, namely, magazines featuring information about fashion in class 016. |
| 3,267,866 |  | For: clothing, namely, tee shirts, shirts, jackets, tank tops, sweaters, hats and sweatshirts in class 025. |
| 3,731,401 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,494,781 |  | For: bags, namely, shoulder bags, handbags, messenger bags, back packs, clutches, evening bags, wallets, duffel bags, luggage in class 018. |
| 4,494,841 |  | For: jewelry, namely, rings, earring, necklaces, bracelets, cuff bracelets, brooches, pendants, cuff links, key rings made of precious metals tie fasteners and watch bracelets in class 014. |
| 3,385,415 |  | For: jewelry, namely, bracelets, necklaces, key rings made of precious metals, rings, pendants, watch bracelets in class 014. |

| | | |
|---|---|---|
| 3,385,416 |  | For: clothing, namely, tee shirts, shirts, sweaters, tank tops, sweatshirts, hats and pants in class 025. |
| 3,388,912 |  | For: clothing, namely, tee shirts, shirts, sweatshirts, tank tops and hats in class 025. |
| 4,616,169 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,619,672 |  | For: jewelry, namely, rings, earrings, bracelets, necklaces, pendants, cuff links, cuff bracelets, tie fasteners, key rings made of precious metals, watch bracelets and brooches in class 014. |
| 4,619,673 |  | For: bags, namely, handbags, shoulder bags, back packs, messenger bags, clutches, duffle bags, evening bags, wallets and luggage in class 018. |
| 4,619,674 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, sweat pants, vests, sweaters, jeans, pants, chaps, dresses, skirts, jackets, coats, underwear, swimwear, hats, socks and footwear in class 025. |

| 4,619,675 |  | For: Smoking articles, namely, cigarette lighters, cases and holders not of precious metals, tobacco pouches, cigar cutters and humidors in class 034. |
|---|---|---|
| 3,784,392 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,728,357 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,494,945 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, vests, dresses, skirts, jackets, coats, jeans, leather pants, chaps, undergarments, swimwear, hats and footwear in class 025. |
| 4,494,946 |  | For: jewelry, namely, rings, earrings, bracelets, necklaces, cuff bracelets, cuff links, brooches, pendants, key rings made of precious metals, tie fasteners and watch bracelets in class 014. |
| 3,731,402 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |

| | | |
|---|---|---|
| 4,494,838 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, tie fasteners, brooches, pendants, cuff links, key rings made of precious metals and watch bracelets in class 014. |
| 4,497,576 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, leather pants, chaps, skirts, dresses, vests, jackets, coats, swimwear, underwear, hats and footwear in class 025. |
| 5,186,624 |  | For: belt buckles; belt buckles for clothing; zipper pulls; clothing accessories, namely, charms for attachment to zipper pulls and buttons in class 026. |
| 3,388,920 |  | For: clothing, namely, tee shirts, shirts, sweatshirts, jackets and pants in class 025. |
| 3,728,356 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,494,782 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, tie fasteners, cuff links, watch bracelets in class 014. |

13

| | | |
|---|---|---|
| 3,731,403 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,510,024 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, vests, jackets, jeans, leather pants, dresses, skirts, swimwear, undergarments, hats and footwear in class 025. |
| 3,894,026 |  | For: jewelry, namely, rings, earrings, pendants, cuff bracelets, bracelets, necklaces, cuff links, watch bracelets, brooches and dog tags for wear by humans for decorative purposes in class 014. |
| 2,214,641 |  | For: clothing, namely, shirts, tee shirts, pants, jeans, leather jackets, leather vests, leather pants, chaps, coats, gloves, men's and women's underwear, clothing belts and footwear; namely, boots in class 025. |
| 2,214,642 |  | For: bags; namely, shoulder bags, wallets, tote bags, handbags, garment bags and luggage in class 018. |
| 2,284,625 |  | For: jewelry made wholly or in part of precious metals; namely, bracelets, necklaces, rings, pendants, earrings, key rings, brooches, lapel pins, cuff links, watches and belt buckles made wholly or in part of precious metals in class 014. |

| | | |
|---|---|---|
| 4,643,894 |  | For: eyewear, namely, eyeglasses and sunglasses; component parts for all of the aforesaid goods; and cases for eyeglasses and sunglasses in class 009. |
| 3,728,359 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,510,020 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, cuff links, key rings, watch bracelets and tie fasteners in class 014. |
| 4,510,021 |  | For: clothing, namely, shirts, tee shirts, tank tops, sweaters, vests, sweat shirts, sweat pants, jeans, leather pants, chaps, skirts, jackets, dresses, undergarments, hats, swimwear and footwear in class 025. |
| 4,643,872 |  | For: bags, namely, shoulder bags, wallets, tote bags, handbags, evening bags, clutches, messenger bags, back packs, duffle bags, garment bags for travel and luggage in class 018. |
| 3,385,439 |  | For: clothing, namely, tee shirts, shirts, sweatshirts and hats in class 025. |

| 3,828,365 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, sweaters, jackets, lingerie and hats in class 025. |
|---|---|---|
| 3,831,922 |  | For: bags, namely, hand bags, shoulder bags, messenger bags, back packs, duffle bags, clutches, evening bags, wallets and luggage in class 018. |
| 3,882,533 |  | For: jewelry, namely, rings, earrings, pendants, necklaces, bracelets, dog tags for wear by humans for decorative purposes, and cuff links in class 014. |
| 3,658,047 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets and luggage in class 018. |
| 4,510,022 |  | For: bags, namely, handbags, shoulder bags, messenger bags, clutches, evening bags, tote bags, duffel bags, wallets and luggage in class 018. |
| 3,605,968 |  | For: men's and women's clothing, namely, pants, jeans and chaps in class 025. |
| 3,637,806 |  | For: bags, namely, handbags, shoulder bags, back packs, messenger bags, clutches, wallets and luggage in class 018. |

| 3,873,570 |  | For: belt buckles for clothing in class 026. |
| 3,873,571 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, vests, jackets, coats, pants, jeans and hats in class 025. |
| 4,497,539 |  | For: eyewear, namely, sunglasses, eyeglasses and their cases in class 009. |
| 3,388,913 |  | For: clothing, namely, tee shirts, shirts, tank tops and sweatshirts in class 025. |
| 4,439,515 |  | For: jewelry, namely, rings, earrings, bracelets, necklaces, pendants, cuff links, cuff bracelets, key rings made of precious metals and watch bracelets in class 014. |
| 4,501,509 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, vests, sweaters, sweat pants, jeans, leather pants, chaps, skirts, dresses, jackets coats, swimwear, hats, undergarments and footwear in class 025. |

| 4,494,842 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, pendants, cuff links, key rings made of precious metals, tie fasteners and watch bracelets in class 014. |
| 4,494,843 |  | For: clothing, namely, shirts, tee shirts, tank tops, sweaters, sweat shirts, sweat pants, dresses, skirts, jackets, coats, jeans, vests, leather pants, chaps, swimwear, underwear, hats and footwear in class 025. |

15. The above U.S. registrations for the CHROME HEARTS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CHROME HEARTS Trademarks constitute *prima facie* evidence of their validity and of Chrome Hearts' exclusive right to use the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed CHROME HEARTS Trademarks are attached hereto as **Exhibit 1**.

16. One of Chrome Hearts' most iconic and well-recognized trademarks is the "CH Plus Mark" , federal trademark registrations for which include, but are not limited to, U.S. Reg. No. 3,388,911 (for clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweat pants, sweaters, and hats), U.S. Reg. No. 3,365,408 (for retail store services in the field of jewelry, clothing, handbags, eyewear, home furnishings, bed linen, and toys), and U.S. Reg. No. 3,385,449 (for jewelry, namely, bracelets, rings, watch bands, necklaces, and lighters made of precious metals).

17.     Chrome Hearts is also the owner of a federal copyright registration for the CH Plus Mark (U.S. Copyright Reg. No. VA 705-233), a true and correct copy of which is attached hereto as **Exhibit 2**.  Through longstanding use, advertising, and registration, the CH Plus Mark has achieved a high degree of consumer recognition and constitutes a famous mark.

18.     Chrome Hearts has continuously used the CHROME HEARTS Trademarks, including the CH Plus Mark, in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Chrome Hearts Products since their respective dates of first use as noted on the federal trademark registration certificates.

19.     The CHROME HEARTS Trademarks identify, in the United States and throughout the world, high quality leather fashions, jewelry and accessories designed and manufactured by Chrome Hearts.

20.     Due to Chrome Hearts' longstanding use of its marks, extensive sales, and significant advertising and promotional activities, the CHROME HEARTS Trademarks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States, including in Illinois and this Judicial District.

21.     The CHROME HEARTS Trademarks are distinctive when applied to the Chrome Hearts Products, signifying to the consumers that the products originate from Chrome Hearts and are manufactured to Chrome Hearts' high quality standards.   Whether Chrome Hearts manufactures the products itself or licenses others to do so, Chrome Hearts has ensured that products bearing its trademarks are manufactured to the highest quality standards.  Chrome Hearts Products branded under the CHROME HEARTS Trademarks have been widely accepted by the public and are enormously popular.   In view of this popularity, the CHROME HEARTS Trademarks are famous marks.

**The Defendants**

22.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Chrome Hearts.  Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

23.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Chrome Hearts to discover Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Chrome Hearts will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of the Chrome Hearts brand has resulted in its significant counterfeiting.  Consequently, Chrome Hearts has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Chrome Hearts has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Chrome Hearts Products to consumers in this Judicial District and throughout the United States.  E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the

United States. **Exhibit 3**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

25. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187.

26. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Chrome Hearts Products to residents of Illinois.

27. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Chrome Hearts has not licensed or authorized Defendants to use any of its CHROME HEARTS Trademarks, and none of the Defendants are authorized retailers of genuine Chrome Hearts Products.

28. Many Defendants also deceive unknowing consumers by using the CHROME HEARTS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Chrome Hearts Products. Other e-commerce stores operating under Seller Aliases omit using CHROME HEARTS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Chrome Hearts Products.

29. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-

commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

30.    On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Chrome Hearts Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

31.    Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Chrome Hearts Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Chrome Hearts Products were manufactured by and come from a common source and that Defendants are interrelated.

32.    On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

33.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Chrome Hearts' enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Chrome Hearts.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

34.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Chrome Hearts Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Chrome Hearts, have jointly and severally, knowingly and willfully used and continue to use the CHROME HEARTS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Chrome Hearts Products into the United States and Illinois over the Internet.

35.     Defendants' unauthorized use of the CHROME HEARTS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Chrome Hearts Products, including the sale of Counterfeit Chrome Hearts Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Chrome Hearts.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

36.     Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

24

37. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CHROME HEARTS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CHROME HEARTS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Chrome Hearts Products offered, sold or marketed under the CHROME HEARTS Trademarks.

38. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CHROME HEARTS Trademarks without Chrome Hearts' permission.

39. Chrome Hearts is the exclusive owner of the CHROME HEARTS Trademarks. Chrome Hearts' United States Registrations for the CHROME HEARTS Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Chrome Hearts' rights in the CHROME HEARTS Trademarks, and are willfully infringing and intentionally using counterfeits of the CHROME HEARTS Trademarks. Defendants' willful, intentional and unauthorized use of the CHROME HEARTS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Chrome Hearts Products among the general public.

40. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41. Chrome Hearts has no adequate remedy at law, and if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CHROME HEARTS Trademarks.

42.     The injuries and damages sustained by Chrome Hearts have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Chrome Hearts Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

43.     Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Chrome Hearts Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Chrome Hearts or the origin, sponsorship, or approval of Defendants' Counterfeit Chrome Hearts Products by Chrome Hearts.

45.     By using the CHROME HEARTS Trademarks on the Counterfeit Chrome Hearts Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Chrome Hearts Products.

46.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Chrome Hearts Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.     Chrome Hearts has no adequate remedy at law and, if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its Chrome Hearts brand.

## PRAYER FOR RELIEF

WHEREFORE, Chrome Hearts prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CHROME HEARTS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Chrome Hearts Product or is not authorized by Chrome Hearts to be sold in connection with the CHROME HEARTS Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Chrome Hearts Product or any other product produced by Chrome Hearts that is not Chrome Hearts' or not produced under the authorization, control, or supervision of Chrome Hearts and approved by Chrome Hearts for sale under the CHROME HEARTS Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Chrome Hearts Products are those sold under the authorization, control, or supervision of Chrome Hearts, or are sponsored by, approved by, or otherwise connected with Chrome Hearts;

   d. further infringing the CHROME HEARTS Trademarks and damaging Chrome Hearts' goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or

inventory not manufactured by or for Chrome Hearts, nor authorized by Chrome Hearts to be sold or offered for sale, and which bear any of Chrome Hearts' trademarks, including the CHROME HEARTS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Chrome Hearts' choosing, the registrant of the Domain Names shall be changed from the current registrant to Chrome Hearts, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Chrome Hearts' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Chrome Hearts' selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Chrome Hearts' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CHROME HEARTS Trademarks;

4) That Defendants account for and pay to Chrome Hearts all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the CHROME HEARTS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Chrome Hearts be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CHROME HEARTS Trademarks;

6) That Chrome Hearts be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of April 2021.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Martin F. Trainor
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
mtrainor@gbc.law

*Counsel for Plaintiff Chrome Hearts LLC*