IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHROME HEARTS LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>                Defendants. | Case No. 21-cv-02042<br><br>**Judge Gary Feinerman**<br><br>**Magistrate Judge Heather K. McShain** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DOMAIN NAMES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary transfer of the Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. The Chrome Hearts Trademarks and Products | 2 |
| | B. Defendants' Unlawful Activities | 4 |
| III. | ARGUMENT | 4 |
| | A. Standard for Temporary Restraining Order and Preliminary Injunction | 6 |
| | B. Chrome Hearts Will Likely Succeed on the Merits | 7 |
| | C. There Is No Adequate Remedy at Law, and Chrome Hearts Will Suffer Irreparable Harm in the Absence of Preliminary Relief | 8 |
| | D. The Balancing of Harms Tips in Chrome Hearts' Favor, and the Public Interest Is Served by Entry of the Injunction | 9 |
| IV. | THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE | 10 |
| | A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the CHROME HEARTS Trademarks Is Appropriate | 11 |
| | B. Transferring the Domain Names to Chrome Hearts' Control Is Appropriate | 11 |
| | C. Preventing the Fraudulent Transfer of Assets Is Appropriate | 12 |
| | D. Chrome Hearts Is Entitled to Expedited Discovery | 13 |
| V. | A BOND SHOULD SECURE THE INJUNCTIVE RELIEF | 14 |
| VI. | CONCLUSION | 14 |

**MEMORANDUM OF LAW**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Chrome Hearts' Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products, including jewelry, bags, shoes and other accessories using infringing and counterfeit versions of Chrome Hearts' federally registered trademarks (the "Counterfeit Chrome Hearts Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation, and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Chrome Hearts Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Chrome Hearts is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Chrome Hearts Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Chrome Hearts respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces and Domain Names.

1

## II. STATEMENT OF FACTS

### A. The Chrome Hearts Trademarks and Products

Plaintiff Chrome Hearts is an American luxury brand that has been designing, manufacturing, and selling artistically styled leather goods, apparel, jewelry, accessories, home goods and furniture since 1989. *See* Declaration of Mario Lejtman (the "Lejtman Declaration") at ¶ 4. Chrome Hearts is known around the world for its unique rocker-chic jewelry, leather clothing, executive gadgets, striking hand-crafted wood furniture, and top-of-the-line sunglasses (collectively, the "Chrome Hearts Products"). *Id.* at ¶ 5. Chrome Hearts is known for combining the look of rugged apparel with sterling silver details to make highly desired fashion apparel and accessories. *Id.*

Virtually all Chrome Hearts Products, including clothing, denim and jewelry are handmade in Los Angeles by Chrome Hearts' craftsmen. *Id.* at ¶ 11. The level of expert workmanship exercised by these individuals is superior and conforms to the strict standards established by Chrome Hearts. *Id.* The Chrome Hearts brand is a multi-million-dollar brand, and Chrome Hearts spends considerable resources marketing and protecting it. *Id.* at 12.

Chrome Hearts is the owner of the trademark CHROME HEARTS and various composite trademarks comprising the CHROME HEARTS house mark and assorted design components (collectively, the "CHROME HEARTS Trademarks"). *Id.* at ¶ 13. Chrome Hearts has continuously sold Chrome Hearts Products under the CHROME HEARTS house mark since at least as early as 1989. *Id.* As a result of its long-standing use, Chrome Hearts owns common law trademark rights in its CHROME HEARTS Trademarks. *Id.* Chrome Hearts has built substantial goodwill in and to the CHROME HEARTS Trademarks. *Id.* The CHROME HEARTS Trademarks are famous and valuable assets of Chrome Hearts. *Id.*

In addition to common law trademark rights, Chrome Hearts has registered several of its CHROME HEARTS Trademarks with the United States Patent and Trademark Office. *Id.* at ¶ 14. The U.S. registrations for the CHROME HEARTS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 15. The registrations for the CHROME HEARTS Trademarks constitute *prima facie* evidence of their validity and of Chrome Hearts' exclusive right to use the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1057(b).

One of Chrome Hearts' most iconic and well-recognized trademarks is the "CH Plus Mark" , federal trademark registrations for which include, but are not limited to, U.S. Reg. No. 3,388,911 (for clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweat pants, sweaters, and hats), U.S. Reg. No. 3,365,408 (for retail store services in the field of jewelry, clothing, handbags, eyewear, home furnishings, bed linen, and toys), and U.S. Reg. No. 3,385,449 (for jewelry, namely, bracelets, rings, watch bands, necklaces, and lighters made of precious metals). *Id.* at ¶ 16. Chrome Hearts is also the owner of a federal copyright registration for the CH Plus Mark (U.S. Copyright Reg. No. VA 705-233). *Id.* at ¶ 17. Through longstanding use, advertising, and registration, the CH Plus Mark has achieved a high degree of consumer recognition and constitutes a famous mark. *Id.* at ¶ 18.

Chrome Hearts has continuously used the CHROME HEARTS Trademarks, including the CH Plus Mark, in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Chrome Hearts Products since their respective dates of first use as noted on the federal trademark registration certificates. *Id.* at ¶ 19. The CHROME HEARTS Trademarks

identify, in the United States and throughout the world, high quality leather fashions, jewelry and accessories designed and manufactured by Chrome Hearts. *Id.* at ¶ 20.

Due to Chrome Hearts' longstanding use of the CHROME HEARTS Trademarks, substantial annual sales, and significant advertising and promotional activities, the CHROME HEARTS Trademarks, including the CH Plus Mark, have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States, including in Illinois and this Judicial District.

**B.   Defendants' Unlawful Activities**

The success of the Chrome Hearts brand has resulted in its significant counterfeiting. *Id.* at ¶ 21. Consequently, Chrome Hearts has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Chrome Hearts has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Chrome Hearts Products to consumers in this Judicial District and throughout the United States. *Id.*

Chrome Hearts' well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Chrome Hearts Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants provide additional credible information regarding their identities, Chrome Hearts will take appropriate steps to amend the Complaint.

**III.   ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Chrome Hearts' reputation and the goodwill symbolized by the

CHROME HEARTS Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the CHROME HEARTS Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio ("Gaudio Declaration") at ¶¶ 5-11. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Chrome Hearts respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold

Counterfeit Chrome Hearts Products to residents of Illinois. *See* Complaint at ¶¶ 2, 26-27. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required).

Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Chrome Hearts substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Chrome Hearts Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, Chrome Hearts' CHROME HEARTS Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Lejtman Declaration at ¶ 14. The registrations for the CHROME HEARTS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 15. The registrations for the CHROME HEARTS Trademarks constitute *prima facie* evidence of their validity and of Chrome Hearts' exclusive right to use the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Chrome Hearts has not licensed or authorized Defendants to use any of its CHROME HEARTS Trademarks, and none of the Defendants are authorized retailers of genuine Chrome Heart Products. *Id*. at ¶ 24. Thus, Chrome Hearts satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the CHROME HEARTS Trademarks. The result is the same when considered in light of

7

the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Chrome Hearts has submitted extensive documentation showing that Defendants are selling Counterfeit Chrome Hearts Products that look similar to genuine Chrome Hearts Products and use infringing and counterfeit marks identical to the CHROME HEARTS Trademarks. Chrome Hearts' consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Chrome Hearts Products from Counterfeit Chrome Hearts Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Chrome Hearts Products to purchase Counterfeit Chrome Hearts Products instead. In that regard, Defendants advertise Counterfeit Chrome Hearts Products using the CHROME HEARTS Trademarks. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Chrome Hearts Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Chrome Hearts is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

    **C.**    **There Is No Adequate Remedy at Law, and Chrome Hearts Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal

remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the CHROME HEARTS Trademarks has and continues to irreparably harm Chrome Hearts through diminished goodwill and brand confidence, damage to Chrome Hearts' reputation, loss of exclusivity, and loss of future sales. Lejtman Declaration at ¶¶ 32-36. The extent of the harm to Chrome Hearts' reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Chrome Hearts will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Lejtman Declaration at ¶ 37.

**D. The Balancing of Harms Tips in Chrome Hearts' Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Chrome Hearts has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable

9

harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Chrome Hearts will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Chrome Hearts has demonstrated, Defendants have been profiting from the sale of Counterfeit Chrome Hearts Products. Thus, the balance of equities tips decisively in Chrome Hearts' favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Chrome Hearts' approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Chrome Hearts seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the CHROME HEARTS Trademarks Is Appropriate

Chrome Hearts requests a temporary injunction requiring the Defendants to immediately cease all use of the CHROME HEARTS Trademarks, or substantially similar marks, on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to Chrome Hearts' CHROME HEARTS Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the CHROME HEARTS Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Chrome Hearts is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Counterfeit Chrome Hearts Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (order granting *ex parte* Motion for Temporary Restraining Order).

### B. Transferring the Domain Names to Chrome Hearts' Control Is Appropriate

As part of the Temporary Restraining Order, Chrome Hearts also seeks temporary transfer of the Domain Names to Chrome Hearts' control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, Chrome Hearts respectfully

11

requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Domain Names to transfer the Domain Names to Chrome Hearts.

**C.      Preventing the Fraudulent Transfer of Assets Is Appropriate**

Chrome Hearts requests an *ex parte* restraint of Defendants' assets so that Chrome Hearts' right to an equitable accounting of Defendants' profits from sales of Counterfeit Chrome Hearts Products is not impaired.[2]  Issuing an *ex parte* restraint will ensure Defendants' compliance.  If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.  Specifically, upon information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Chrome Hearts meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) .  In addition, Chrome Hearts has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Chrome Hearts is entitled, "subject to the principles of equity, to recover ... defendant's profits."  Chrome Hearts' Complaint seeks, among other relief, that Defendants account for and pay to Chrome Hearts all profits realized by Defendants by reason of Defendants' unlawful acts.  Therefore, this Court has the inherent equitable authority to grant Chrome Hearts' request for a prejudgment asset freeze to preserve relief sought by Chrome Hearts.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company

---

[2] Chrome Hearts has filed a Motion for Leave to File Under Seal certain documents for this same reason.

12

against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Chrome Hearts has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts. Accordingly, an asset restraint is proper.

### D. Chrome Hearts Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).
Chrome Hearts respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Chrome Hearts' Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Chrome Hearts'

13

seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Chrome Hearts respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Chrome Hearts' evidence of counterfeiting, infringement, and false designation of origin, Chrome Hearts respectfully requests that this Court require Chrome Hearts to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

### VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Chrome Hearts' business, its famous Chrome Hearts brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Chrome Hearts Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Chrome Hearts Products have been manufactured by or emanate from Chrome Hearts, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Chrome Hearts respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 16th day of April 2021.                Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Martin F. Trainor
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
mtrainor@gbc.law

*Counsel for Plaintiff Chrome Hearts LLC*